# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1067

_____

Graphic Communications Local 1B     *
Health & Welfare Fund "A"; The Twin   *
Cities Bakery Drivers Health and     *
Welfare Fund, individually and on     *
behalf of all others similarly situated,   *
    *
       Plaintiffs – Appellees,     *
    *
    *   Appeal from the United States
      v.     *   District Court for the
    *   District of Minnesota.
CVS Caremark Corporation; CVS     *
Pharmacy, Inc; Caremark, LLC;     *
Caremark Minnesota Specialty     *
Pharmacy, LLC; Caremark Minnesota   *
Specialty Pharmacy Holding, LLC;     *
Kmart Holding Corporation; Sears,     *
Roebuck and Company; Sears Holding   *
Corporation; Snyder's Drug Stores     *
(2009), Inc.; Snyder's Holdings (2009),   *
Inc.; Target Corporation; Walgreens     *
Co.; Wal-Mart Stores, Inc.; Coborn's,   *
Inc.; Snyder's Holdings, Inc.,     *
    *
       Defendants – Appellants.     *

_____

Submitted: January 11, 2011
Filed: March 11, 2011

_____

Before BOWMAN, BYE, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

Plaintiffs, a group of union-sponsored health benefit plans, brought suit in Minnesota state court alleging various generic drug pricing claims against Defendants, who represent leading retail pharmacy chains. Plaintiffs also requested certification of a class of all purchasers of, or third-party payment sources for, generic prescription drugs dispensed by Defendants in Minnesota since July 28, 2003. On August 21, 2009, Defendants removed the case to federal court, asserting diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(4). On November 24, 2009, the district court granted Defendants' motion to dismiss the complaint without prejudice. The next day, Plaintiffs filed a second amended complaint, and shortly thereafter, they moved to remand the case to state court based on CAFA's local controversy provision. On July 19, 2010, the district court granted Plaintiffs' motion and remanded the case to state court after it determined it lacked subject matter jurisdiction over the matter. On appeal, Defendants contend CAFA's local controversy provision does not divest the court of subject matter jurisdiction, and because Plaintiffs moved to remand the matter more than thirty days after removal, the remand motion should have been denied as untimely pursuant to 28 U.S.C. § 1447(c). We reverse and remand to the district court for further proceedings.

We review the district court's interpretation of CAFA de novo. Westerfeld v. Indep. Processing, LLC, 621 F.3d 819, 822 (8th Cir. 2010). Defendants first argue the district court erred in concluding it lacked subject matter jurisdiction due to CAFA's local controversy provision, which provides "[a] district court shall decline to exercise jurisdiction" if certain conditions are met. 28 U.S.C. § 1332(d)(4). We agree. In analyzing the language of the statute in light of the purposes Congress sought to serve, see Westerfeld, 621 F.3d at 824, the plain text demonstrates the district court has broad subject matter jurisdiction in CAFA actions when the amount in controversy exceeds $5,000,000 in the aggregate, minimal diversity exists among the parties, and there are at least 100 members in the class. Id. at 822 (citing 28 U.S.C. § 1332(d).

There is no dispute the jurisdictional requirements were satisfied in the instant case. The local controversy provision, which is set apart from the above jurisdictional requirements in the statute, inherently recognizes the district court has subject matter jurisdiction by directing the court to "decline to exercise" such jurisdiction when certain requirements are met. See, e.g. Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1023 (9th Cir. 2007) ("§§ 1332(d)(4)(A) and (B) *require* federal courts – although they *have* jurisdiction under § 1332(d)(2) – to '*decline to exercise jurisdiction*' when the criteria set forth in those provisions are met.") (emphasis in original). Thus, the local controversy provision operates as an abstention doctrine, which does not divest the district court of subject matter jurisdiction.

Our conclusion that the local controversy provision does not deprive courts of subject matter jurisdiction accords with prior case law addressing other abstention doctrines. For instance, in In re Otter Tail Power Co., 116 F.3d 1207, 1216 n.8 (8th Cir. 1997), we noted, "the district court's dismissal of this matter for lack of subject matter jurisdiction is antithetical to a decision to abstain, which implicitly acknowledges the existence of jurisdiction." See also Wallace v. La. Citizens Prop. Ins. Corp., 444 F.3d 697, 701 (5th Cir. 2006) (discussing how the abstention provision at issue "does not deprive federal courts of subject matter jurisdiction, but rather, acts as a limitation upon the exercise of jurisdiction granted" elsewhere in the statute).

In conjunction with the above discussion, Defendants next argue the district court erred in granting Plaintiffs' motion to remand because the remand motion was made more than thirty days after the case was removed to federal court. Under 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . ." Having determined the local controversy provision is akin to an abstention doctrine, which is not jurisdictional in nature, we must examine whether it constitutes "any defect other than subject matter jurisdiction," such that

Plaintiffs' remand motion was untimely because it was not brought within thirty days after removal.

To answer this question, we again start with the plain text of the statute. Section 1447(c) and its related provisions do not define what constitutes a "defect." "The sixth edition of Black's Law Dictionary, which was the current version when the statute was amended, defines 'defect' as '[t]he want or absence of some legal requisite; deficiency; imperfection; insufficiency." Kamm v. ITEX Corp., 568 F.3d 752, 755 (9th Cir. 2009) (quoting Black's Law Dictionary 418 (6th ed. 1990)). Based on this commonly-understood definition of "defect," Plaintiffs urge us to construe the term narrowly, such that section 1332(d)(4) does not constitute a "defect." See Thomas R. Hrdlick, Appellate Review of Remand Orders in Removed Cases: Are They Losing a Certain Appeal?, 82 Marq. L. Rev. 535, 572 (1999) ("On its face, the term reasonably implies either the lack of something necessary or the presence of something objectionable."). Conversely, Defendants urge a broad reading of "defect," pointing to the statute's full phrase "defect *other than* subject matter jurisdiction," which suggests that subject matter jurisdiction itself is a "defect" under the language of the statute.

Due to the ambiguous statutory text, we find it beneficial to examine the history of section 1447(c). Prior to 1988, the statute read as follows:

> If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.

Holmstrom v. Peterson, 492 F.3d 833, 836 (7th Cir. 2007) (quoting Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 342 (1976)). Despite the broad language, courts construed the statute "to mean removals that were defective in terms of the statutory conditions that Congress had placed on removal," whereas removals based on

abstention, among other doctrines, were held to be outside the scope of the statute. Id. In 1988, section 1447(c) was amended to provide:

> A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Id. (quoting 28 U.S.C. § 1447(c) (1994)). "The 1988 amendments sought to confirm the courts' narrow reading of § 1447(c) by replacing the term 'improvidently' with 'defect in the removal procedure,'" and thus doctrines such as abstention continued to be interpreted as being outside the statute's bounds. Id. at 837. However, in the seminal case of Snapper, Inc. v. Redan, 171 F.3d 1249, 1257-58 (11th Cir. 1999), the Eleventh Circuit discussed how the 1988 formulation proved difficult for courts to apply in the context of rules not traditionally categorized as procedural, such as the forum defendant rule, which appeared to be more substantive in nature. Correspondingly, a circuit split developed concerning whether the thirty-day limit should apply in this context. Id. at 1258.

According to Snapper, "[i]t is in this context that the 1996 version must be understood." Id. The 1996 amendment which produced the current version replaced the language of "removal procedure" with "any defect other than lack of subject matter jurisdiction." 28 U.S.C. § 1447(c). "Commentators have suggested a possible reading of the amendments to the effect that § 1447(c) now covers all remand orders." Autoridad de Energia Electrica de Puerto Rico v. Ericsson, Inc., 201 F.3d 15, 17 (1st Cir. 2000); see also David D. Siegel, Commentary on 1996 Revision of Section 1447(c), 28 U.S.C.A. § 1447 (opining that abstention doctrines qualify as something other than subject matter jurisdiction, and therefore come within the purview of section 1447(c)). Indeed, Defendants suggest such a broad reading to include all

remand motions other than those based on subject matter jurisdiction within the ambit of section 1447(c).

However, cases such as <u>Snapper</u> have held otherwise. There, the Eleventh Circuit concluded "defect" is limited to removal defects, rather than any removable ground. <u>Snapper</u>, 171 F.3d at 1258. According to the court, this result was bolstered by the legislative history of section 1447(c), such as the fact the House Judiciary Committee held no hearings on the 1996 amendment "because it viewed the Bill as technical and noncontroversial." <u>Id.</u> (quoting H.R. Rep. No. 104-219, at 2 (1996), reprinted in 1996 U.S.C.C.A.N. 3417, 3418). Moreover, the legislative history demonstrated the amendment was directed at clarifying Congress's intent, and it was intended to have only a small impact on cases because most courts were already interpreting the law consistent with its intended purpose. <u>Id.</u> at 1258-59. <u>Snapper</u> noted a contrary view in which the statute is read expansively to cover all remands would radically depart from the established law. <u>Id.</u> at 1259. "Indeed, if the word 'defect' in the post-1996 version of § 1447(c) includes all grounds for remand other than lack of subject matter jurisdiction, the post-1996 version would have overruled two then-recent Supreme Court cases . . . ." <u>Kamm</u>, 568 F.3d at 756-57.

Following <u>Snapper</u>, cases from other circuits have declined to read "defect" as broadly as Defendants suggest. <u>See, e.g.</u> <u>Kamm</u>, 568 F.3d at 757 (concluding the thirty-day limit did not apply to a forum selection clause because it was not a "defect" within the meaning of the statute); <u>Ericsson</u>, 201 F.3d at 17 (holding the interpretation of a forum selection clause was not a "defect" encompassed under the statute). We find the reasoning in these cases persuasive in the instant matter. Although Congress undoubtably intended to broaden section 1447(c) in 1996, we do not read the term "defect" as broadly as Defendants suggest. "Congress could have changed § 1447(c) to cover a motion to remand the case on 'any basis' or 'any ground,' but instead kept the narrower term 'defect.' <u>Kamm</u>, 568 F.3d at 755. Accordingly, we conclude the local controversy provision was not a "defect" within the meaning of section 1447(c).

-6-

However, "[t]he mere fact that the statutory time limitation on raising motions to remand does not apply does not mean that non-1447(c) remands are necessarily authorized at any time." Snapper, 171 F.3d at 1257 n.18. Indeed, we do not believe the applicable time limitation for the instant motion to remand is equivalent to the anytime-before-judgment (or even on appeal) standard applicable for subject matter jurisdiction. Prior to the 1988 amendment of section 1447(c), remand motions were required to be brought within a "reasonable" time frame. Id. (citing Ayers v. Watson, 113 U.S. 594, 596-99 (1885)). In Snapper, the Eleventh Circuit noted "[t]his rule continues for remands not covered by § 1447(c)." Id. (discussing how a reasonable time may be "significantly shorter" in situations where remand is "generally apparent from the time of removal," and may even be synonymous with the statutory requirement of thirty days). Likewise, in Kamm, the Ninth Circuit concluded there were "good policy reasons" to impose a time limit on a remand motion based on a forum selection clause, "whether that limit be thirty days or some other period," such as the fact that the parties should be aware of such a clause at the time of removal, and the benefits of resolving the question early in the litigation. 568 F.3d at 757.

We recognize there may be similar considerations to take into account in this case, but, along with the central question of whether the more than 100 days it took for Plaintiffs to move to remand constitutes a "reasonable" time frame, we remand to the district court to make these determinations in the first instance. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 603 (8th Cir. 2009) (remanding to the district court to first determine a question that had not yet been presented).

Accordingly, we reverse and remand for further proceedings.
_____