# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

——————

No. 15-10732

——————

JAMES H. WATSON, And Others Similarly Situated,

Plaintiff - Appellant

v.

CITY OF ALLEN, TEXAS; CITY OF AMARILLO TEXAS; CITY OF ARLINGTON, TEXAS; CITY OF AUSTIN TEXAS; CITY OF BALCH SPRINGS TEXAS; CITY OF BALCONES HEIGHTS, TEXAS; CITY OF BASTROP, TEXAS; CITY OF BAYTOWN, TEXAS; CITY OF BEDFORD TEXAS; CITY OF BURLESON, TEXAS; CITY OF CEDAR HILL, TEXAS; CITY OF CLEVELAND, TEXAS; CITY OF CONROE, TEXAS; CITY OF COPPELL TEXAS; CITY OF CORPUS CHRISTI TEXAS; CITY OF DALLAS, TEXAS; CITY OF DENTON, TEXAS; CITY OF DIBOLL, TEXAS; CITY OF DUNCANVILLE, TEXAS; CITY OF EL PASO TEXAS; CITY OF ELGIN, TEXAS; CITY OF FARMERS BRANCH, TEXAS; CITY OF FORT WORTH, TEXAS; CITY OF FRISCO TEXAS; CITY OF GARLAND TEXAS; CITY OF GRAND PRAIRIE TEXAS; CITY OF HALTOM CITY, TEXAS; CITY OF HUMBLE, TEXAS; CITY OF HURST, TEXAS; CITY OF HUTTO, TEXAS; CITY OF IRVING TEXAS; CITY OF JERSEY VILLAGE, TEXAS; CITY OF KILLEEN TEXAS; CITY OF LEAGUE CITY, TEXAS; CITY OF LITTLE ELM, TEXAS; CITY OF LONGVIEW, TEXAS; CITY OF LUFKIN, TEXAS; CITY OF MAGNOLIA, TEXAS;  CITY OF MARSHALL TEXAS; CITY OF MESQUITE TEXAS; CITY OF NORTH RICHLAND HILLS, TEXAS; CITY OF PLANO TEXAS; CITY OF PORT LAVACA, TEXAS; CITY OF RICHARDSON, TEXAS; CITY OF RICHLAND HILLS, TEXAS; CITY OF ROANOKE, TEXAS; CITY OF ROUND ROCK, TEXAS; CITY OF SOUTHLAKE, TEXAS; CITY OF SUGAR LAND TEXAS; CITY OF TOMBALL TEXAS; CITY OF UNIVERSITY PARK TEXAS; CITY OF WATAUGA, TEXAS; CITY OF WILLIS, TEXAS;  REDFLEX TRAFFIC SYSTEMS, INCORPORATED; AMERICAN TRAFFIC SOLUTIONS, INCORPORATED; AMERICAN TRAFFIC SOLUTIONS, L.L.C.; XEROX STATE & LOCAL SOLUTIONS, INCORPORATED, formerly known as ACS State & Local Solutions, Incorporated; STATE OF TEXAS

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2016

Lyle W. Cayce
Clerk

No. 15-10732

Defendants - Appellees

—————————

Appeals from the United States District Court
for the Northern District of Texas

—————————

Before REAVLEY, JOLLY, and ELROD, Circuit Judges.

REAVLEY, Circuit Judge:

This putative class action challenges the use of red light cameras within Texas and, more specifically, the legislation authorizing such cameras. The case was originally filed in state court and subsequently removed to federal court. We must decide whether it should have been remanded.[1]

BACKGROUND

Chapter 707 of the Texas Transportation Code allows municipalities to install and operate "photographic traffic signal enforcement systems," *i.e.*, red light cameras. Tex. Transp. Code Ann. §§ 707.001(3), 707.002. Municipalities that choose to take advantage of Chapter 707 may enact ordinances authorizing civil penalties against "the owner of a motor vehicle" that is photographed running a red light. *Id.* at § 707.002. The 53 municipal defendants in this case have done so. Private companies administer the municipalities' red light camera programs. *See id.* at § 707.003. Defendants American Traffic Solutions, L.L.C., American Traffic Solutions, Inc. (collectively, "ATS"), Redflex Traffic Systems, Inc. ("Redflex"), and Xerox State

---

[1] The 58 defendants in this case filed eleven appellees' briefs. Most of them are duplicative and many of them expressly adopt portions of other briefs pursuant to Federal Rule of Appellate Procedure 28(i). Accordingly, throughout this opinion, we refer generically to the arguments of the "appellees." Where relevant, we identify which particular party or parties make which particular arguments.

and Local Solutions, Inc. ("Xerox") are the private companies with which the municipal defendants have contracted.

James Watson received a citation after his vehicle was photographed running a red light. He was not driving the vehicle at the time of the infraction and was, in fact, out of state. Watson paid the penalty and then brought this putative class action challenging Chapter 707 and the various municipal ordinances enacted pursuant to Section 707.002. He also sought damages from ATS, Redflex, and Xerox, alleging that they had violated various state laws and the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").

Watson filed his action in state court, but it was removed to federal court based on the RICO claim and the Class Action Fairness Act of 2005 ("CAFA"), which generally speaking, "provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

Arguing that Watson lacked standing to sue those entities not directly involved with his citation, defendants promptly began filing motions to dismiss based on Federal Rule of Civil Procedure 12(b)(1). While those motions were still pending, Watson amended his complaint to delete the RICO claim. Eleven days later, he moved to remand arguing that CAFA's exceptions precluded the district court from exercising diversity jurisdiction over the action and arguing that, given the deletion of his RICO claim, the exercise of supplemental jurisdiction over the state law claims was improper.

The district court ultimately dismissed the claims against all but three of the defendants "because plaintiff does not have standing under Texas law to assert the dismissed claims." (The only remaining defendants are Texas, the City of Southlake, and Redflex—the parties directly involved in Watson's

No. 15-10732

citation.)  The district court then denied Watson's motion to remand, finding that it was untimely as it pertained to CAFA and that the exercise of supplemental jurisdiction was warranted.  Watson timely appealed.

DISCUSSION

I.

Watson argues on appeal that the case should have been remanded to state court following the dismissal of the RICO claim because the exercise of supplemental jurisdiction over the state claw claims was improper and because the case falls within CAFA's mandatory abstention provisions.  He also argues that the district court erred by ruling he lacked standing to bring his claims against certain of the defendants.  This combination of issues produces an issue of its own.  In what order should Watson's arguments be addressed?

Generally, we consider Article III standing first because it relates to subject matter jurisdiction.  Here, however, there is a fundamental antecedent question—whether this case even belongs in federal court.  Watson has independent Article III standing to challenge the case's removal to federal court.  *See Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 77, 111 S. Ct. 1700, 1704 (1991).  Accordingly, we first consider whether Watson's motion to remand should have been granted.

The district court addressed the propriety of retaining supplemental jurisdiction before addressing CAFA jurisdiction.  CAFA, however, provides for original jurisdiction.  28 U.S.C. § 1332(d)(2).  If CAFA applies, the district court has original jurisdiction over the entire action and there is no "supplemental" jurisdiction at all.  Indeed, the test to determine whether exercise of supplemental jurisdiction was proper includes a query into whether "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C.A. § 1367(c)(3).  That question cannot be answered until we have

No. 15-10732

determined whether the district court properly exercised jurisdiction over the action pursuant to CAFA. We start there.

II.

The parties agree that this action meets CAFA's basic requirements pertaining to the amount in controversy, the number of plaintiffs, and the existence of minimal diversity. They disagree on whether the district court erred by finding Watson's motion to remand untimely and whether either the "local controversy" or "home state" exceptions apply.[2] We first consider the remand motion's timeliness.

A.

The district court found Watson's remand motion untimely because it was filed more than thirty days after the case's removal and because it was not filed within a "reasonable amount of time." The 30-day deadline applied by the district court is found in 28 U.S.C. § 1447(c), which provides: "A motion to remand the case on the basis of any defect other than lack of subject matter

---

[2] These exceptions are found at 28 U.S.C. § 1332(d)(4)(A) (the local controversy exception) & (B) (the home state exception). In its entirety, subsection (d)(4) provides:

A district court shall decline to exercise jurisdiction under paragraph (2)--
(A)(i) over a class action in which--
(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
(II) at least 1 defendant is a defendant--
(aa) from whom significant relief is sought by members of the plaintiff class;
(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was originally filed; and
(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or
(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." Does invocation of the local controversy and home state expectations implicate a "defect" subject to this 30-day deadline? Joining all other circuits that have considered the issue, we hold that Section 1447(c) does not apply to remand motions based on CAFA's mandatory abstention provisions. *See Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 975 (8th Cir. 2011); *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 142 (2d Cir. 2013).

We have already recognized that the "local controversy" and "home state" exceptions require abstention from the *exercise* of jurisdiction and are not truly jurisdictional in nature. *See Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 568 (5th Cir. 2011) (per curiam). This follows from Section 1332's text, which directs district courts to "decline to exercise" CAFA jurisdiction where specific conditions exist. 28 U.S.C. § 1332(d)(4). Thus, Section 1332(d)(4) "does not deprive federal courts of subject matter jurisdiction, but rather, acts as a limitation upon the exercise of jurisdiction granted" by CAFA. *See Wallace v. La. Citizens Prop. Ins. Corp.*, 444 F.3d 697, 701 (5th Cir. 2006).

"An 'abstention-based remand order does not fall into either category of remand order described in § 1447(c), as it is not based on lack of subject matter jurisdiction or defects in removal procedure.'" *Id.* at 701 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S. Ct. 1712, 1718 (1996)).[3] Because Watson's motion to remand was based on a mandatory abstention provision rather than a "defect," Section 1447(c)'s 30-day deadline does not apply.

---

[3] In 1996, Section 1447(c) was amended to remove the phrase "in removal procedure," which appears in *Quackenbush*. *Wallace* impliedly rejects the notion that the amendment abrogated *Quackenbush*. Other circuits have squarely held the same. *See, e.g.*, *Graphic Commc'ns*, 636 F.3d at, 975; *Kamm v. ITEX Corp.*, 568 F.3d 752, 756 (9th Cir. 2009); *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1258 (11th Cir. 1999).

No. 15-10732

The inapplicability of the Section 1447(c) deadline does not mean there is no deadline at all. Prior to the enactment of a 30-day deadline, "a motion to remand was untimely only if it was filed after a reasonable time had elapsed or after the taking of affirmative steps in federal court." *Belser v. St. Paul Fire & Marine Ins. Co.*, 965 F.2d 5, 8 (5th Cir. 1992). The Eleventh Circuit has held that "[t]his rule continues for remands not covered by § 1447(c)." *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1257 (11th Cir. 1999). The Second, Third, Eighth and Ninth Circuits are in accord. *Gold*, 730 F.3d at 142*; Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1213 n.8 (3d Cir. 1991); *Graphic Commc'ns*, 636 F.3d at 975–6; *Kamm v. ITEX Corp.*, 568 F.3d 752, 757 (9th Cir. 2009). We are unaware of any conflicting holdings and join these circuits. *See Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 264 (5th Cir. 2014) (noting that we are "hesitant to create a circuit split absent a persuasive justification").

Motions to remand pursuant to Section 1332(d)(4) must be brought within a reasonable time. We review for an abuse of discretion the district court's determination that the motion was not brought within a reasonable time. *Gold*, 730 F.3d at 142. The district court seemingly found the fifty-two days it took to file the motion unreasonable because the basis for "remand [was] generally apparent from the time of removal." We cannot agree.

Watson bore the burden of showing that Section 1332(d)(4) was satisfied. *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006). Carrying the burden typically requires presentation of admissible evidence.[4] *See*

---

[4] Appellees argue that Watson did not need evidence because, given the nature of the lawsuit, "[c]ommon sense dictates that Texas citizens comprise more than two-thirds of the individuals within the class definition." We do not decide whether evidence was necessary. When opposing Watson's remand motion, appellees argued that he failed to collect *enough* evidence showing Texas citizenship of the class members. Their new and contrary argument is disingenuous. Whether or not Watson needed the affidavits he collected, there was nothing unreasonable about gathering them, or about the time spent doing so.

No. 15-10732

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 796 (5th Cir. 2007).  Thus, while the basis for remand may have been readily apparent at the time of removal, it still remained to collect the evidence.  All indications are that Watson acted diligently to gather evidence and file his motion to remand the case.  Finally, fifty-two days is simply not a very long time.  *See Foster*, 933 F.2d at 1213 n.8 (observing that the various reasons a remand motion should be filed within a reasonable time "simply are not present in this case as [the remand] motion was made on the 54th day after removal").

The district court erred by deeming Watson's remand motion untimely. Because the home state and local controversy exceptions have been fully briefed and their application is a question of law subject to *de novo* review, we consider their applicability in the first instance.

B.

Watson argues that both the "home state" and "local controversy" exceptions apply to this action and preclude the exercise of CAFA jurisdiction. We first consider the home state exception.  Cases removed to federal court pursuant to CAFA must be remanded if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(B).  As already noted, appellees no longer dispute that at least two-third of the proposed plaintiffs are citizens of Texas.  Accordingly, the home state exception applies if all of the primary defendants are citizens of Texas.  *See Frazier*, 455 F.3d at 546 (holding that the phrase "the primary defendants" means *all* primary defendants).

The only defendants in this case who are not citizens of Texas are ATS, Xerox, and Redflex.  The question, therefore, is whether they are "primary defendants."  Only one Fifth Circuit case has applied this requirement.  In *Hollinger*, we determined the applicability of the home state exception in a case

8

brought against several insurance companies that could be divided into two categories. 654 F.3d at 568. One set of defendants, the "County Mutuals," had allegedly issued policies in violation of the Texas Insurance Code. *Id.* The other set of defendants, the "Reinsurers," had allegedly "participated in and permitted such violations." *Id.* "The County Mutuals," we held, were "the primary defendants, because all putative class members, by definition, have claims against the County Mutuals, and as the entities that issued the insurance policies, the County Mutuals have a primary role in the alleged discrimination." *Id.* at 572.

Here, the first aspect of *Hollinger* illuminates nothing because all of the putative plaintiffs will have claims against Texas, against at least one municipality, and against at least one of the private companies. It is the state and the municipalities, however, that had the "primary role in the alleged" violations of the Texas Constitution.

This suit's primary thrust is an attempt to declare unconstitutional the Texas red light camera legislative scheme. The challenged laws were enacted by the Texas legislature and various municipalities, who therefore played the primary role. As Watson alleged, "[t]he substantive issues controlling the outcome of this litigation are whether Transportation Code Chapter 707, the red light ordinances set forth above enacted pursuant to same, and Section 29.003(g) of the Texas Government Code are constitutional or not."[5] It is true that Watson alleged various other claims against the private defendants. Those claims, however, are expressly contingent on a threshold finding that the challenged legislative scheme is unconstitutional. Moreover, the private companies' very hiring can be traced to the challenged legislation. *See* Tex.

---

[5] Section 29.003(g) of the Texas Government Code reads: "A municipal court, including a municipal court of record, shall have exclusive appellate jurisdiction within the municipality's territorial limits in a case arising under Chapter 707, Transportation Code."

Transp. Code Ann. § 707.003.  ATS, Xerox, and Redflex are not primary defendants, and the home state exception applies.

Appellees agree that the state and the municipalities are primary defendants but argue that "ATS, Xerox, and Redflex must also be considered 'primary defendants.'"  Appellees' arguments lack a textual footing and are unavailing.  The phrase "primary defendants" indicates a chief defendant or chief class of defendants.  According it a broader meaning is inconsistent with this ordinary meaning and with CAFA's distinct treatment of "primary" defendants, *see* 28 U.S.C. § 1332(d)(4)(B), (d)(5)*,* and "significant" defendants, *see id.* at § 1332(d)(4)(A)(i)(II).  This case illustrates the linguistic awkwardness of giving the word "primary" a broad and inclusive meaning.  We deal here with 58 different defendants occupying three different strata of significance.  A person generally familiar with the case and with the English language who asked, "Well, which are the primary defendants?" would not expect the answer to be "all of them."  Because the home state exception applies, we need not consider the local controversy exception.

### III.

Having determined that CAFA will not support the exercise of diversity jurisdiction over the action, we next consider whether the district court properly exercised supplemental jurisdiction over Watson's state law claims. We share the parties' mutual assumption that, because there existed a federal claim at the time of removal, supplemental jurisdiction may potentially displace CAFA's call for mandatory remand.  Even so, in this case, the exercise of supplemental jurisdiction was an abuse of discretion. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 158 (5th Cir. 2011).

"The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial."  *Brookshire Bros. Holding v. Dayco Products, Inc.*, 554 F.3d 595,

602 (5th Cir. 2009). We have considered the statutory and common law factors. *See Enochs*, 641 F.3d at 159–60. As in *Enochs*, "[t]he mistake which led the district court to abuse its discretion was in failing to reconsider its jurisdiction over the Texas state law claims as of the moment it granted [the] motion to file an amended complaint deleting all federal claims from the case." *Id.* at 161.

The district court's primary reason for retaining jurisdiction was the level of work put into determining the defendants' many motions to dismiss. Watson, however, deleted his lone federal claim and sought remand before those motions were decided. Further, though the question of state law standing has been extensively litigated, "[l]ittle new legal research would be necessary" to put these arguments before a Texas state court. *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 587 (5th Cir. 1992); *see also Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999) (finding the judicial economy factor to favor remand where, despite "substantial pretrial activity," "the parties' work product could be taken, with little loss, to the state litigation"). State claims substantially predominate over the federal claim, which has been dismissed, and considerations of judicial economy favor remand. *See Enochs*, 641 F.3d at 159–60.

Additionally, Watson's lawsuit challenging Chapter 707 "concerns a novel Texas state law issue with no Texas Supreme Court guidance." *Id.* at 159. We deal here with an action directly contending that a Texas legislative scheme violates the Texas Constitution and has produced thousands of violations of other state laws. Texas courts have a strong interest in deciding whether Texas legislation comports with the Texas Constitution (and in defining the contours of state law standing). On matters of Texas law, they speak with an authority rightly denied federal courts. *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500, 61 S. Ct. 643, 645 (1941). This lawsuit touches on multiple issues of state importance while impacting no federal policy. *See*

No. 15-10732

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27, 86 S. Ct.1130, 1139 (1966). Considerations of comity weigh dramatically in favor of remand. *See Parker & Parsley*, 972 F.2d at 589–90 & n.12.

The district court concluded that Watson's maneuvering evinced attempted forum manipulation. In that regard, it is enough to say, as we did in *Enochs,* that a "motion to amend [the] complaint to delete the federal claims is not a particularly egregious form of forum manipulation, if it is manipulation at all." 641 F.3d at 160. Assuming manipulation, "it was not so improper as to override the balance of the statutory and common law factors weighing heavily in favor of remand."[6] *Id.* at 161. We follow *Enochs*, 641 F.3d at 161, and rule that the district court abused its discretion in not remanding.

CONCLUSION

We express no opinion on the merit of Watson's putative class action or on whether his theory of standing is sound. We simply hold that this case belongs in state court. Accordingly, we VACATE the district court's judgment and REMAND the case with instructions to the district court to remand the case to the Texas state court whence it came.

---

[6] The parties agree that the common law factor of convenience is neutral in this case. We also do not discuss fairness, a common law factor with little salience under the circumstances. Finally, because we have already found the exercise of supplemental jurisdiction to be an abuse of discretion, we do not determine whether additional "exceptional circumstances" also favor remand. *See* 28 U.S.C. § 1367(c)(4).