In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-1552

CLAYTON W. CREASON,

*Plaintiff-Appellant,*

*v.*

ELANCO US INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:22-cv-00853-RLY-MKK — **Richard L. Young**, *Judge.*

ARGUED NOVEMBER 4, 2025 — DECIDED JUNE 29, 2026

Before EASTERBROOK, KIRSCH, and KOLAR, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Clayton Creason worked at
Elanco US as an engineer between November 2017 and November 2021. During that time, employees with less than four
years' service received 120 hours (three weeks) of paid vacation time annually and were eligible to participate in a "vacation buy" program offering a fourth week of paid leave. Employees who elected to participate agreed to reduce their salaries by enough to cover the pay that they would receive dur-

ing the fourth vacation week. For Creason that reduction was about $84 a week.

Before quitting in November 2021, Creason took all available paid leave time and all of the extra leave accrued through the vacation buy program. (We'll return later to a dispute about extra vacation hours offered during the COVID-19 pandemic.) After his employment was over, Creason filed this suit under the Indiana Wage Payment Statute, Ind. Code §§ 22-2-5-0.5 to 22-2-5-3, asserting that Elanco shorted his pay by $84 a week and must make up that sum, plus statutory penalties. (An amendment to this statute takes effect on July 1, 2026; we cite the version in effect during Creason's employment.)

Creason never sought to withdraw from the program, but he contends that Indiana requires participation to be memorialized in a formal assignment of wages, which must include written notice that the assignment may be rescinded at any time. Ind. Code §22-2-6-2(a)(1). The suit was filed in state court, and Creason sought to represent a class of similarly situated workers. Relying on the Class Action Fairness Act (CAFA or the Act), 28 U.S.C. §§ 1332(d), 1453, Elanco removed the suit to federal court, where it prevailed. 2023 U.S. Dist. Lexis 249067 (S.D. Ind. Dec. 11, 2023) (dismissal on pleadings in part); 2025 U.S. Dist. Lexis 64395 (S.D. Ind. Mar. 10, 2025) (summary judgment on remaining theories).

One immediate question: Why is this case in federal court? True, the Act allows class actions with at least 100 class members whose aggregate stakes exceed $5 million to be removed based on minimal (rather than complete) diversity of citizenship, and those criteria are satisfied. But §1332(d) has exceptions, one of which says:

> A district court shall decline to exercise jurisdiction …
>
>> (A)(i) over a class action in which—
>>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed[.]

28 U.S.C. §1332(d)(4). That description fits this case. The putative class includes only persons who worked for Elanco in Indiana. Some of the employees may be citizens of other states and commute to Indiana, but two-thirds of them almost certainly are citizens of Indiana. The principal defendant, Elanco, has its headquarters in Indiana and is a citizen of Indiana under 28 U.S.C. §1332(c)(1)(C). So the "district court shall decline to exercise jurisdiction". That command is not itself jurisdictional (to "decline to exercise" jurisdiction implies that jurisdiction exists), but we have treated it as an abstention doctrine. See, e.g., *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664–65 (7th Cir. 2014).

So why is the suit in federal court? The answer is that both sides ignored §1332(d)(4) when the case was removed and for some time thereafter. *Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675 (7th Cir. 2006), holds that the party relying on the home-state exemption of §1332(d)(4) has the burden of

showing that it applies, and Creason, who eventually moved for a remand, did not seriously attempt to discharge that burden at or near the time of removal. During discovery Creason received a spreadsheet showing that more than two-thirds of the participants in the vacation buy program lived in Indiana; he and his lawyer did not act on that information until 171 days later (which was 348 days after the removal). The district court found this delay unreasonable, because substantial steps toward resolving the merits already had taken place in federal court, and it denied Creason's motion to remand. 2023 U.S. Dist. LEXIS 249056 (S.D. Ind. Aug. 9, 2023). That decision cannot be called an abuse of discretion. It is unfortunate that everyone ignored §1332(d)(4) for so long, but once the litigation was well under way in federal court the district judge was entitled to see it through to decision.

Note what we are not saying. In the district court Elanco contended that remand became impossible once the 30-day period specified by 28 U.S.C. §1447(c) expired. The judge observed, however, that §1453 has its own rules for the removal and remand of class actions and lacks a deadline comparable to §1447(c). Several other circuits have held, therefore, that parties have a "reasonable" time to seek remand of actions that come within §1332(d)(4). See, e.g., *Graphic Communications Union v. CVS Caremark Corp.*, 636 F.3d 971, 975–76 (8th Cir. 2011); *Snapper, Inc. v. Redan*, 171 F.3d 1249, 1257 n.18 (11th Cir. 1999); *Kamm v. ITEX Corp.*, 568 F.3d 752, 757 (9th Cir. 2009); *Watson v. Allen*, 821 F.3d 634, 640 (5th Cir. 2016). We agree with those decisions, which are compatible with our analysis in *Employers Insurance of Wausau v. El Banco de Seguros del Estado*, 357 F.3d 666, 670 (7th Cir. 2004). The problem with Creason's motion to remand is not that it came after 30 days but that it came almost a year after the removal—and Creason lacks a cogent explanation for the delay. An earlier motion to

remand would have succeeded, but the district judge acted soundly in denying Creason's belated one.

On to the merits. The district judge concluded that the vacation buy program does not entail an "assignment" of wages and so is outside the statutory requirement of a writing that includes a notice of the right to rescind.

Normally one thinks of an assignment of wages as a direction to pay all or part of the money to someone else—a creditor, perhaps, or a relative. The statute has a long list of matters that are treated as assignments, such as a "[p]remium on a policy of insurance obtained for the employee by the employer." Ind. Code §22-2-6-2(b)(1). The list has 18 items, none of which is anything like Elanco's vacation buy program.

Creason wants us to put aside such details. He relies on *E&L Rental Equipment, Inc. v. Bresland*, 782 N.E. 2d 1068, 1071 (Ind. App. 2003), which says that the statutory coverage should be read broadly. Perhaps that would assist him, if Elanco had taken a deduction from Creason's pay and put the money in escrow, to be used to cover the extra vacation week. But that is not what happened.

Elanco did not deduct anything from Creason's pay, and the statute applies only to deductions from wages. Ind. Code §22-2-6-1. There was no fund. Instead Creason agreed to accept a lower weekly wage in exchange for more leisure: he would work 48 weeks a year rather than 49 and receive correspondingly less pay. Elanco didn't send money to a third party or even its own bank account; it simply paid the weekly wage that Creason had agreed to accept.

Consider an example, which uses simplified numbers. Suppose Perkins's annual salary with a three-week vacation is $100,000, or $1,923 a week. To support a fourth paid week

off, Perkins agrees to reduce the annual salary by one week's pay and spread the remainder (about $98,100) over 52 weeks. That would come to about $37 less per week. If Creason were right to characterize the $1,923 as an "assignment" of wages, Perkins's salary would remain at $100,000, and he would pay income taxes on that amount. If, however, Perkins is taking a salary reduction, swapping leisure for income, only $98,100 would be taxable income. So we looked at Creason's pay stubs, which are in the record. They show that he was not taxed on the $84 a week by which his salary dropped when he elected to participate in the vacation buy program. Conclusion: there was no assignment, because there was nothing *to* assign. No matter how "broadly" we read §22-2-6-2, it does not cover a contract between employee and employer that sets the base wage and the number of paid vacation weeks.

The final issue in this case concerns the proper treatment of vacation hours available to Creason on his last day at work. Indiana does not require employers to pay workers for unused vacation time—but, if they agree to do so, then they must, just as they must pay agreed wages. See *Commissioner of Labor v. Painters Union*, 991 N.E. 2d 100, 103 (Ind. 2013).

The dispute concerns vacation hours affected by the COVID-19 pandemic. Unused vacation time at Elanco normally expires at the end of each year. But Elanco gave everyone on the payroll in 2020 a right to carry forward to the next year 40 hours of regular vacation time plus 40 hours of time purchased through the vacation buy program. These hours would not carry to 2022—and, Elanco added, hours carried from 2020 to 2021 had to be used in 2021 and would not be paid out in cash if left unused. Elanco also provided that workers must use their annual vacation time ahead of the rollover COVID time.

When Creason quit, he had used all of his regular vacation time accrued in 2021 (including the time added by the vacation buy program) and had only COVID rollover hours from 2020 remaining. Consistent with its stated policy, Elanco did not pay cash for those unused hours—and, since Indiana does not require an employer to pay vacation hours remaining at the end of employment unless it has promised to do so, the state statute does not entitle Creason to any further compensation. The district court provides some further details, 2025 U.S. Dist. LEXIS 64395 at *8–14, that we need not repeat.

After resolving in Elanco's favor on the merits all claims advanced on behalf of a class, the district judge dismissed as "moot" Creason's motion to certify a class. The court should have addressed this subject ahead of the merits, Fed. R. Civ. P. 23(c)(1)(A), but neglected to do so. Class certification would be "moot" only if it were impossible to certify a losing class. Until the 1966 amendments to Rule 23, that would have been true. But after those amendments a class can lose as well as win. See, e.g., *Bennett v. Dart*, 953 F.3d 467, 469 (7th Cir. 2020); *Schleicher v. Wendt*, 618 F.3d 679, 686 (7th Cir. 2010). The subject therefore was not moot; certification remained possible.

Still, Creason's appellate request that we direct the district court to certify a class on remand shows that he would be a poor representative. What diligent representative of other workers wants to take them down in flames with him? The district court's reason for declining to act on class certification may have been wrong, but the result was right.

AFFIRMED