12-2344-cv
Avraham Gold v. New York Life Insurance Co.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

_____

August Term, 2012

(Argued: April 3, 2013        Decided: September 18, 2013)

Docket No. 12-2344-cv

_____

AVRAHAM GOLD, Individually, on behalf of all others similarly situated,

*Plaintiff-Appellant*,

v.

NEW YORK LIFE INSURANCE COMPANY; NEW YORK LIFE INSURANCE AND ANNUITY
CORPORATION; NEW YORK LIFE INSURANCE COMPANY OF ARIZONA; JOHN DOES 1 through 50,
said names being fictitious individuals; ABC CORPORATIONS 1 through 50, said names being
fictitious companies, partnerships, joint ventures and/or corporations; and NEW YORK LIFE
SECURITIES, LLC f/k/a NEW YORK LIFE SECURITIES, INC.,

*Defendants-Appellees*.

Before: B.D. PARKER, LOHIER, AND CARNEY, *Circuit Judges*.

_____

Appeal from a judgment of the United States District Court for the Southern District of
New York (Pauley, *J.*) dismissing a complaint based on the "home state exception" to
jurisdiction under the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(4)(B). Plaintiff
argues that the defendant waived the exception by failing to timely raise it. We hold, inter alia,
that the home state exception is not jurisdictional, that it must be raised within a reasonable time,
and that the defendant did so.

**AFFIRMED**.

_____

**JOHN HALEBIAN,** Lovell Stewart Halebian Jacobson LLP, New York, NY (ADAM C. MAYES, *on the briefs*), *for Plaintiffs-Appellants*

**RICHARD G. ROSENBLATT,** Morgan Lewis & Bockius LLP, Princeton, NJ (SEAN P. LYNCH, Morgan Lewis & Bockius LLP, Princeton, NJ; MICHAEL L. BANKS, Morgan Lewis & Bockius LLP, Philadelphia, PA, *on the brief*), *for Defendants-Appellees.*

BARRINGTON D. PARKER, *Circuit Judge*:

Plaintiff-Appellant Avraham Gold appeals from a judgment of the United States District Court for the Southern District of New York (Pauley, *J.*) dismissing his complaint based on the so-called "home state exception" to federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711-15. The home state exception requires district courts to "decline to exercise" jurisdiction over class actions in which two-thirds or more of the class, and the primary defendants, are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B).

In 2009, Gold sued his former employer, New York Life Insurance Company ("New York Life"), both individually and on behalf of a putative class of insurance agents, alleging state law claims seeking unpaid overtime wages and recovery of improper wage deductions. *See* N.Y. Lab. Law §§ 663, 193, and 198(1-a). He also sought statutory liquidated damages under New York Labor Law. The case was litigated for a number of years during which the district court granted summary judgment to New York Life on Gold's overtime claim, denied Gold summary judgment on his wage deduction claim, and ruled that a 2011 amendment to New York Labor Law that increased the amount of recoverable liquidated damages did not apply

retroactively. In 2012, New York Life moved to dismiss the complaint based on CAFA's home state exception. Concluding that the exception applied, the district court dismissed the complaint.

Gold appeals, contending that New York Life waived the home state exception by failing to raise it within a reasonable time. For the reasons that follow, we hold that CAFA's home state exception is not jurisdictional and must be–and in this case was–raised within a reasonable time. We also hold that the 2011 amendment to New York Labor Law is not retroactive and that the district court's grant of partial summary judgment with respect to Gold's overtime claim was correct.

**BACKGROUND**

New York Life is a mutual insurance company that sells life insurance and other financial products. Joint Appx. 861. Gold was employed as an insurance agent at the company's New York office from December 2001 to August 2004. Joint Appx. 30. It is not disputed that throughout Gold's employment, New York Life classified him as an outside salesman whose main responsibility was to sell insurance. Under New York Labor Law, outside salesmen are not entitled to overtime pay. *See* 12 NYCRR § 142-2.2 (by reference to 29 U.S.C. § 213(a)(1) which exempts outside salesmen (as defined in 29 C.F.R. § 541.500) from Fair Labor Standards Act ("FLSA") overtime provisions).

When Gold started with New York Life, he was licensed to sell life insurance as well as annuities. Later, he obtained licenses which allowed him to also sell products with investment components and permitted him to use the title "registered representative." Joint Appx. 868-69. To make sales, Gold was trained by New York Life to follow a six-step process that included

3

researching a client's needs, recommending products to meet those needs, and ultimately selling the client those products. Joint Appx. 169-70. As a registered representative, Gold was obligated to also comply with Financial Industry Regulatory Authority ("FINRA") regulations ensuring that he only recommended products that were suitable for his clients. *See* FINRA Manual, Rule 2111 (Suitability Rule).

While at New York Life, Gold's wage consisted solely of commissions on sales. He was not paid a salary or an hourly wage. New York Life used a so-called "ledger-based" payment system under which an agent, including registered representative, would receive credits for commissions he earned and debits for expenses he incurred such as for use of New York Life's telephone services and office space. Joint Appx. 307, 311-12, 591. At the end of each bi-weekly pay period, New York Life would issue the agent a paycheck that netted the credits on his ledger against the debits. Joint Appx. 14, ¶¶ 12-24. In 2009, Gold sued New York Life in a putative class action, predicating jurisdiction on CAFA, and asserting that because he was responsible for making investment recommendations to clients, he should not have been classified as an outside salesman and denied overtime pay. *See* N.Y. Lab. Law § 663. He also alleged that because New York Life's payment system involved subtracting costs incurred from commissions earned, it violated New York Labor Law § 193, which prohibits employers from making deductions from, and charges against, wages.

In May 2011, the district court granted New York Life summary judgment on Gold's overtime claim, holding that there was no genuine dispute of material fact as to whether Gold's primary duty was sales and therefore whether he was properly classified as an outside salesman and excluded from overtime pay. *Gold v. New York Life Ins. Co.*, No. 09-Civ-3210, 2011 WL

4

2421281, at *6 (S.D.N.Y. May 19, 2011). In August 2011, proceeding on the wage deduction claim alone, Gold moved to add a claim for liquidated damages under New York Labor Law.[1] *See* N.Y. Lab. Law § 198(1-a). The liquidated damages statute had been amended earlier in 2011 to increase the amount recoverable from 25% to 100% of any underpayment. S.B. 8380, 233rd Legis., Reg. Sess. (N.Y. 2010). The district court permitted Gold to add the liquidated damages claim but ruled that he could not benefit from the amendment because it was not retroactive. *Chenensky v. New York Life Ins. Co.*, No. 07-Civ-11504, 2012 WL 234374, *2-3 (S.D.N.Y. Jan. 10, 2012). The district court also denied Gold summary judgment on his wage deduction claim, concluding that factual disputes remained as to whether Gold's commission constituted an earned "wage," from which any deductions would violate New York Labor Law § 193. *Id*. at *5.

After the summary judgment rulings, and nearly three years after the complaint had been filed, New York Life asserted that it had discovered that more than two-thirds of the putative class members were New York citizens. Arguing that the requirements of CAFA's home state exception had been met, it then moved to dismiss the complaint for lack of subject matter jurisdiction, or in the alternative, for the court to decline jurisdiction. In response, Gold claimed that New York Life's delay in raising the issue constituted waiver. New York Life contended that the exception was jurisdictional and could not be waived. In the alternative, New York Life argued that its delay was justified by the discovery schedule, requested by Gold and imposed by

---

[1] At the time of his initial filing, liquidated damages were thought not to be available in New York law-based class actions. In March 2010, however, in *Shady Grove Orthopedic Associates. P.A. v. Allstate Insurance Company*, 130 S. Ct. 1431, 1438-40 (2010), the Supreme Court of the United States held that because federal law and not state procedural law governs class actions in federal court, New York law's prohibition on awarding statutory penalties in class actions was inapplicable to suits in federal court.

5

the court, that required the parties to complete all individual discovery before commencing class discovery. New York Life reasoned that because it was forced to wait until all individual discovery was complete–in 2011–to start class discovery, it could not have determined any earlier that more than two-thirds of the class consisted of New York citizens.

The district court concluded that the exception was not jurisdictional and that New York Life had not waived the issue because its delay was justified by the discovery schedule. *Gold v. New York Life Ins. Co.*, No. 09-Civ-3210, 2012 WL 1674300, at *3-4 (S.D.N.Y. May 14, 2012). Because it was not disputed that the home state exception applied if the issue had not been waived, the district court declined to exercise jurisdiction and dismissed the complaint. *Id*. at *1, 4. This appeal followed.

**DISCUSSION**

**I.      CAFA's Home State Exception**

CAFA confers original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity, *i.e.*, where at least one plaintiff and one defendant are citizens of different states. 28 U.S.C. § 1332(d)(2). CAFA includes several exceptions, including the home state exception which provides that: "[a] district court shall decline to exercise jurisdiction . . . over a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

The district court, relying on *Graphic Communications Union v. CVS Caremark Corporation*, 636 F.3d 971, 973 (8th Cir. 2011), and *Morrison v. YTB International , Inc*., 649 F.3d 533, 536 (7th Cir. 2011), held that the home state exception was not jurisdictional because

the "'decline to exercise'" language "'inherently recognizes [that] the district court has subject matter jurisdiction'" but must actively decline to exercise it if the exception's requirements are met. *Gold*, 2012 WL 1674300, at * 2 (quoting *Graphic Commc'ns Union*, 636 F.3d at 973). Reviewing this issue *de novo*, we agree with the district court's conclusion, and align our Circuit with the Seventh and Eighth Circuits, in concluding that Congress's use of the term "decline to exercise" means that the exception is not jurisdictional.

Gold argues that if the exception is not jurisdictional, it must be raised within a reasonable time, and that New York Life failed to do so and thereby waived the exception. We agree with Gold and hold that parties invoking the exception must do so within a reasonable time. However, we further hold that New York Life did so and therefore did not waive the exception.

In *Graphic Communications Union*, the defendants removed a case alleging various drug pricing claims from state to federal court, invoking federal jurisdiction under CAFA. The plaintiffs, relying on another of CAFA's exceptions–the local controversy exception, which also includes the "decline to exercise jurisdiction" language –moved to remand the case to state court. The district court agreed that the exception applied and remanded the case. The defendants appealed, contending that the motion to remand had not been timely. CAFA contains no time limit for when remand motions must be made. The Eighth Circuit held that remand motions based on CAFA must be raised within a reasonable time. *See Graphic Commc'ns Union*, 636 F.3d at 973-74. We believe that this approach is sound and similarly hold that motions to dismiss under CAFA's home state exception must also be made within a reasonable time. *Cf. Hamilton v. Atlas Turner, Inc.*, 197 F. 3d 58, 62 (2d Cir. 1999) (affirming that defendant waived

7

its objection to personal jurisdiction by failing to timely raise it through a motion to dismiss, although the federal rules provide no time limit for such motions). While what is reasonable will vary according to the relevant facts, it is preferable that such motions be made at the earliest practicable time. *See Snapper, Inc. v. Redan*, 171 F.3d 1249, 1257 n.18 (11th Cir. 1999) (noting that if a remand is based on an issue that "is generally apparent from the time of removal," the "reasonable time may be significantly shorter").

Here, nearly three years after the complaint was filed, New York Life moved to dismiss based on the home state exception. Under most circumstances we would have serious doubts that a delay of this length could be deemed reasonable. But, the application of the exception was, to a certain extent, complicated by the discovery schedule imposed by the district court. Gold had requested that individual discovery proceed first, followed by class discovery. The court agreed, and as a result, class discovery did not start until 2011. New York Life claimed that it learned only through class discovery that more than two-thirds of the class–New York Life agents employed in New York–were New York citizens, and then moved to dismiss based on the home state exception. Gold contended that New York Life's delay was excessive and that consequently, the exception had been waived. The district court disagreed. It held that because of the agreed upon bifurcated discovery plan, New York Life had not had the opportunity to discover the citizenship of class members until it undertook class discovery in 2011 and that, under these circumstances, New York Life's delay was excused. 2012 WL 1674300, at *4.

We note at the outset that we are skeptical of the contention that nearly three years is a reasonable time for an employer to determine where its sales force lives, particularly where, as here, the sales force in question is limited to those who worked in the very "home state" at issue.

8

However, we review the district court's determination for abuse of discretion. *Cf. Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 99 (2d Cir. 2012) (reviewing abstention rulings for abuse of discretion). Because the district court is in a better position than we are to evaluate when New York Life's motion could have been made, based on its greater familiarity with the course of the litigation, especially scheduling and discovery matters, we are not prepared to say that the district court abused its discretion. We will only note that there are numerous instances where the home state exception was raised much more promptly than it was in this case, and without full blown class discovery.[2]

## II.      Retroactivity of 2011 Amendment to New York Labor Law

Prior to November 2009, New York Labor Law's liquidated damages provision provided that if a plaintiff proved that an employer's failure to pay a required wage was "willful," the plaintiff could recover "an additional amount as liquidated damages equal to twenty-five percent of the total wages found to be due him." N.Y. Lab. Law § 198(1-a) (Consol. 2008). Effective November 24, 2009, the statute was amended to impose a presumption of liquidated damages, but permit an employer to avoid the penalty by establishing that it had acted in good faith. A.B. 6963, 232nd Legis., Reg. Sess. (N.Y. 2009). The amendment expressly stated that it would only "apply to offenses committed on or after such effective date." *Id.* On April 9, 2011, the statute

---

[2] *See, e.g.*, *Commisso v. PricewaterhouseCoopers LLP*, No. 11-Civ-5713 (NRB), 2012 WL 3070217, at *5 (S.D.N.Y. July 27, 2012) ((holding that CAFA exception applied based on defendant's submissions regarding the citizenship of its current and former employees as reflected in available human resources records) (motion to dismiss filed within six months of the complaint)); *see also Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 451-52 (S.D.N.Y. 2009) ((relying on defendant's affidavit stating that 96.7% of mortgage loans at issue in suit were New York co-op loans to conclude that class of loan borrowers was likely comprised of all New York citizens and that therefore home state exception applied) (motion to dismiss filed within five months of the complaint)); *Mattera v. Clear Channel Commc'ns, Inc*., 239 F.R.D. 70, 80-81 (S.D.N.Y. 2006) ((assuming that two-thirds of the class were New York citizens because the entire putative class was employed by a New York-based company) (motion to dismiss filed within five months of the complaint)).

was amended again to raise the amount of recoverable liquidated damages from 25% to 100% of any underpayment. S.B. 8380, 233rd Legis., Reg. Sess. (N.Y. 2010). Unlike the 2009 amendment, the 2011 amendment included no language providing that it would have only prospective effect and, consequently, Gold argues, the amendment is retroactive. The district court disagreed and held that the 2011 amendment did not apply retroactively. Based on our *de novo* review, *see United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008), we hold that the district court was correct.

Generally, "retroactive operation of statutes is not favored by [New York] courts" and it "takes a clear expression of the legislative purpose to justify a retroactive application." *See Majewski v. Broadalbin-Perth Cent. School Dist.*, 91 N.Y.2d 577, 584 (1998). Under New York law, to determine if such a purpose exists, courts look to the text of the legislation at issue. *See id.* at 583-84. If the text is not clear, courts then look to the legislative history. *See id.* Based on our review, we see no clear expression of retroactivity. Indeed, neither the text nor the legislative history mentions retroactivity. *See* S.B. 8380, 233rd Legis., Reg. Sess. (N.Y. 2010) (providing only that "this act shall take effect on the one hundred twentieth day after it shall have become a law"); NY Bill Jacket, 2010 S.B. 8380, Ch. 564; NY S.B. Summ., 2010 S.B. 8380, Nov. 9, 2010; New York Spons. Memo., 2010 S.B. 8380, Oct. 28, 2010, 233rd Legislature, 2010 Regular Session.

Faced with no support for retroactivity in the text or legislative history, Gold contends that, because the statute is remedial, under New York law, any amendments to it are presumed to have retroactive effect. That contention, however, does not reflect the current state of New York law. The New York Court of Appeals has noted that, although amendments to remedial statutes

10

were once presumed to be retroactive, the classification of a statute as "remedial" no longer automatically overcomes the strong presumption against retroactivity and that a better guide for discerning the intent of the legislature is text and history. *Majewski*, 91 N.Y.2d at 584; *see also CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 262 (2d Cir. 2009). Because there is no support for retroactivity in either the text or the legislative history, we hold that the 2011 amendment is not retroactive.[3]

### III. Summary Judgment

The district court held that there was no genuine dispute as to a material fact that Gold's primary responsibility was to sell insurance and that, consequently, he was properly classified as an outside salesman not entitled to overtime pay. Ordinarily, "[a] grant of partial summary judgment that resolves only some of the issues raised by a complaint is not an appealable final judgment." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 781 (2d Cir. 1999). However, "[u]pon appeal from a final judgment concluding the action, earlier summary dispositions merge in the judgment and are reviewable." *Id.* (alteration in original, citations and internal quotations omitted). Our review is particularly warranted given the preclusive effects of such a ruling over future claims. *See, e.g.*, *Gentile v. MCA Records, Inc.*, 17 A.D.3d 264 (N.Y. App. Div. 1st Dep't 2005). Consequently, we review the district court's summary judgment ruling granting summary judgment as to Gold's overtime claim *de novo*[4] and agree with its conclusion. *See In re Novartis*

---

[3] We note that a contrary holding would mean that the 2011 amendment would apply retroactively, while the 2009 amendment–which the 2011amendment builds upon–would not. We do not believe the legislature intended such an odd result.

[4] We, however, decline to review the district court's decision denying partial summary judgment as to Gold's wage deduction claim. Where a district court has denied summary judgment because resolution of such claim requires the adjudication of issues of fact that are inseparable from the merits, the denial of such motion is not immediately appealable notwithstanding the merger doctrine. *See In re State Police Litig.*, 88 F.3d 111, 122 (2d Cir. 1996) ("[A]

11

*Wage & Hour Litig.*, 611 F.3d 141, 150 (2d Cir. 2010) (*abrogated on other grounds by*

*Christopher v. SmithKline Beecham Corp.*, 132. S. Ct. 2156 (2012).

"Outside salesmen" are exempted from New York Labor Law's overtime requirements.

"Outside salesm[e]n," are defined as employees:

> (1)Whose primary duty is: (i) making sales . . . ; or (ii) obtaining orders or
> contracts for services or for the use of facilities for which a consideration will
> be paid by the client or customer; and
> (2) Who is customarily and regularly engaged away from the employer's place
> or places of business in performing such primary duty.

29 C.F.R. § 541.500(a) (defining "outside salesmen" as authorized by FLSA exemption

provision, 29 U.S.C. § 213(a)(1)); *see* 12 NYCRR § 142-2.2 (noting that New York Labor Law's

overtime provision is subject to FLSA exemptions). The applicable regulations further provide

that the "determination of an employee's primary duty must be based on all the facts in a

particular case, with the major emphasis on the character of the employee's job as a whole." 29

C.F.R. § 541.700.

Our review of the record before the district court confirms that Gold's primary duty was

selling insurance. He was hired and trained by New York Life to sell insurance. Joint Appx.

879, ¶ 29, 902-09, ¶¶ 59-72. His compensation as well as his continued affiliation with the

company was tied exclusively to his sales. Joint Appx. 866-67, ¶¶ 7-8, 914-15, ¶¶ 80-83. He

was responsible for maintaining his own client lists, and he conceded that he was regularly

engaged away from his employer's place of business as his responsibilities were to "go out, meet

people" and "close deals." Joint Appx. 901-02, ¶¶ 57-58.

---

denial of summary judgment because of the existence of triable issues of fact with respect to the merits is not immediately appealable."); *see also Burke v. Ernest W. Hahn*, Inc., 592 F. 2d 542, 546 n.3 (9th Cir. 1979) (holding that dismissal for lack of jurisdiction is not a final judgment "into which the denial [of summary judgment] merges"). This is particularly true where our determination would have no preclusive effect on future litigation. *See DiCocco v. Capital Area Comt'y. Health Plan, Inc.*, 159 A.D.2d 119, 123 (N.Y. App. Div. 3d Dep't 1990).

Although Gold argues that research and making investment recommendations were his primary duties, even in the light most favorable to Gold, these duties were merely components of New York Life's six-step process for selling insurance. *See* Joint Appx. 169-70 (describing that in order to ultimately sell insurance products, agents should research clients' financial situations and based on that research, recommend products to them). Gold also argues that because he was a registered representative and thereby subject to FINRA's requirements that he provide sound investment advice, he was a financial advisor, not a salesperson. Gold is correct that FINRA required him to only recommend suitable products to his clients, but this does not change the fact that he was paid only for selling insurance, not for offering financial advice. Moreover, even after becoming a registered representative, ninety percent of Gold's sales were of traditional life insurance products which did not require the title of "registered representative" and did not require that he comply with FINRA regulations. Joint Appx. 875-77, ¶¶ 22-24.

Testimony from Gold's expert David Denmark fails to generate a factual dispute over his duties. Denmark offers observations about registered representatives generally, but he did not interview Gold or review his deposition testimony. Denmark Expert Rep., Joint Appx. 316-37. But FLSA regulations are explicit that the determination of an employee's exemption status must be based on the specific employee's actual primary duties, not on his or her title or position. *See Myers v. Hertz Corp.*, 624 F.3d 537, 549-50 (2d Cir. 2010).

The Department of Labor ("DOL") advisory letters put forth by Gold also do not raise a genuine factual dispute. One letter concerns individuals who–unlike Gold–have Series 7 licenses and are compensated for investment advice. DOL Letter 11/27/06, Joint Appx. 364-71; Joint Appx. 865. In the other letter, the DOL addresses insurance agents and describes two

types: (1) outside salesmen–agents whose primary duty is sales; and (2) administrative employees–agents who service insurance products already purchased, and perhaps occasionally make sales in the process. DOL Letter 1/16/09, Joint Appx. 594-95. Although Gold argues that he belongs in the second group, his duties place him squarely in the first group. He was not compensated on a salary; he sold insurance directly to clients; he regularly met with clients outside of work; and he was responsible for establishing his own client lists–all duties of the first, outside salesmen group. Joint Appx. 90.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.