[59 NYS3d 316]

Avraham Gold et al., Appellants, v New York Life Insurance Co. et al., Respondents.

First Department, July 18, 2017

---

### APPEARANCES OF COUNSEL

*Lovell Stewart Halebian Jacobson, LLP*, New York City (*John Halebian* and *Adam Mayes* of counsel), and *Law Offices of Sanford F. Young, P.C.*, New York City (*Sanford F. Young* of counsel), for appellants.

*Morgan Lewis & Bockius LLP*, New York City and Princeton, N.J. (*Sean P. Lynch* and *Richard G. Rosenblatt* of the New Jersey and Pennsylvania bars, admitted pro hac vice, of counsel), for respondents.

### OPINION OF THE COURT

MOSKOWITZ, J.

On this appeal, we consider an issue that we have never directly addressed before now: whether employees can be obliged to arbitrate collective disputes such as class actions regarding wage disputes with their employers. We find that plaintiffs cannot be required to arbitrate their disputes with defendant New York Life Insurance Company because that obligation would run afoul of the National Labor Relations Act (29 USC § 151 *et seq.*).

Plaintiffs in this action are former insurance agents for defendants New York Life Insurance Company and its related companies (collectively, NY Life), all of which provide a variety of insurance products, including life insurance and annuities. Plaintiffs brought this putative class action seeking recovery for allegedly illegal wage deductions and violations of overtime and minimum wage laws.

NY Life generally hired new agents, including the four named plaintiffs, as Training Allowance Subsidy (TAS) agents for up to three years. As to training the new agents, NY Life had a "sales cycle" that it taught to its agents, which consisted of, among other things, fact-finding or gathering information and, after having done so, tailoring an insurance product to a client's needs.

Upon joining NY Life, each plaintiff signed standardized contracts, including an "Agent's Contract" and a "TAS Plan Agreement." Each Agent's Contract provided that the agent

was not an employee of NY Life, but an independent contractor free to exercise his or her own discretion and judgment in soliciting applications. Plaintiffs Johnson's and Kartal's Agent's Contracts further provided that they were free to work the hours of their choosing and from their own homes or offices. Moreover, their remuneration was not to be based on the number of hours worked, but on commissions "directly related to sales or other output."

NY Life maintained a ledger system to keep track of the compensation payable to each plaintiff. Each agent's ledger tallied credits for commissions and allowances resulting from sales, and tallied debits for certain expenses and commission reversals. Credits and debits were reconciled on a rolling basis as they were posted to the ledger, and plaintiffs' semimonthly pay consisted of their credits net of debits as of the date plaintiffs received their pay. Under the TAS Agreements, when a customer paid the first monthly premium on a policy, the agent was credited with an "advanced" or "annualized commission." Thus, although NY Life had received only a single month's premium payment, it credited the agent's ledger with the commission and training allowance corresponding to a full year's worth of premium payments.

NY Life also offset two kinds of charges against the agent's earnings, only one of which is relevant to this appeal: NY Life debited agents' ledgers for commission reversals or charge-backs. These charge-backs occurred under three circumstances.

First were annualized commission reversals that occurred when a customer cancelled a policy or the policy lapsed within its first year. The TAS Agreements provided that in those circumstances, the annualized commission previously credited for a full year's worth of premium payments would be reversed and the agent would be credited only with commissions corresponding to the premiums received.

Second, the TAS Agreements provided for refunds of premium reversals. Thus, when NY Life rescinded or cancelled a policy and refunded the premium to the customer, in whole or part, NY Life debited the agent's ledger by the commission amount corresponding to the refund.

Third, NY Life charged back commissions on certain products such as annuities and universal life insurance policies if the customer withdrew money from the product or surrendered it within a certain time after purchasing it. Although charged

back commissions were apparently not specified in the Agent's Contracts or TAS Agreements, NY Life's commission manual states that commission charge-backs will occur when a policy is surrendered or foreclosed, or lapsed in the first 24 months after issuance.

Plaintiff Kartal's Agent's Contract contained an arbitration provision requiring arbitration of any claim or dispute with NY Life, with certain exceptions that the parties do not address on this appeal. Additionally, under the arbitration provision, Kartal waived any right to a jury trial and agreed that no claim could be brought or maintained "on a class action, collective action or representative action basis either in court or arbitration." But the provision also provided that if the waiver of class, collective, or representative actions were found to be unenforceable, the class, collective, or representative claim would proceed in court.

The four plaintiffs in this appeal filed this consolidated and amended class action complaint in Supreme Court, New York County, alleging four causes of action; only the second, third, and fourth causes of action are relevant to this appeal.[1] The second cause of action, asserted by all plaintiffs, alleged unlawful wage deductions for commission reversals in violation of Labor Law § 193. The third cause of action, which only plaintiffs Johnson and Kartal asserted, alleged failure to pay overtime in violation of 12 NYCRR 142-2.2. The fourth cause of action, also which only plaintiffs Johnson and Kartal asserted, alleged failure to pay the minimum wage in violation of Labor Law § 652.

Insofar as relevant to this appeal, NY Life moved to dismiss the second, third, and fourth causes of action and to compel Kartal to arbitrate her claims. At oral argument, Supreme Court orally granted so much of the motion as sought to compel plaintiff Kartal to arbitrate her claims. The motion court also converted NY Life's motion to dismiss the second, third, and fourth causes of action as to the other plaintiffs to a motion for summary judgment and ordered supplementary briefing. After

---

**1.** In December 2007, plaintiff Chenensky commenced a class and collective action in the United States District Court for the Southern District of New York. Plaintiff Gold commenced a related class action in the same court in April 2009. Both complaints asserted the same state law class claims for unlawful wage deductions under Labor Law § 193. The District Court ultimately dismissed both actions on various grounds, including jurisdictional ones.

the additional briefing, the motion court granted summary judgment to NY Life, dismissing the second, third, and fourth causes of action as to all plaintiffs except Kartal. At the same time, the court also put in writing its granting of NY Life's motion to compel Kartal to arbitrate her claims, and, pending resolution of the arbitration, stayed the action as to Kartal's claims.

We turn first to that portion of the motion court's order addressing the arbitration provision in Kartal's Agent's Contract.[2] As noted above, the motion court granted that branch of NY Life's motion seeking to compel arbitration of Kartal's claims.

■ Courts of this State have not squarely addressed the question of whether this type of arbitration provision is enforceable. Further, there is a recent split among the Federal Circuit Courts regarding these types of clauses. Upon consideration of the matter, we conclude that the better view is that arbitration provisions such as the one in Kartal's contract, which prohibit class, collective, or representative claims, violate the National Labor Relations Act (NLRA) and thus, that those provisions are unenforceable.

In reaching this conclusion, we agree with the reasoning in *Lewis v Epic Sys. Corp.* (823 F3d 1147 [7th Cir 2016], *cert granted* 580 US —, 137 S Ct 809 [2017]), the recent case from the United States Court of Appeals for the Seventh Circuit, which addressed the enforceability of arbitration agreements prohibiting collective actions. In *Lewis*, the plaintiff employee agreed to an arbitration agreement mandating that wage and hour claims could be brought only through individual arbitration and requiring employees to waive "the right to participate in or receive money or any other relief from any class, collective, or representative proceeding" (*id.* at 1151 [internal quotation marks omitted]). The arbitration agreement also included a clause stating that if the waiver were unenforceable, "any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction" (*id.* [internal quotation marks omitted]).

The plaintiff later had a dispute with the defendant employer, but did not proceed under the arbitration clause (*id.*). Instead,

---

2. NY Life asserts that plaintiff Kartal waived the argument that her arbitration agreement violates the National Labor Relations Act. However, Kartal's argument is based purely on recent case law issued only after issuance of the order appealed from, and therefore may be addressed on appeal (*Nuevo El Barrio Rehabilitación de Vivienda y Economía, Inc. v Moreight Realty Corp.*, 87 AD3d 465, 466 [1st Dept 2011]).

the plaintiff sued in federal court, contending that the employer had violated the Fair Labor Standards Act (29 USC § 201 *et seq.* [FLSA]) and state law by misclassifying him and his fellow employees, thereby unlawfully depriving them of overtime pay (*id.*). The plaintiff argued that the arbitration clause violated the NLRA because it interfered with employees' right to engage in concerted activities for mutual aid and protection, and was therefore unenforceable (*id.*).

The Seventh Circuit denied the employer's motion to proceed under the arbitration clause, declining to enforce a clause that precluded employees from "seeking any class, collective, or representative remedies to wage-and-hour disputes" because the clause "violate[d] Sections 7 and 8 of the NLRA" (*id.* at 1161). According to the court, section 7 of the NLRA provided that employees have the right to engage in concerted activities, and concerted activities "have long been held to include resort to . . . judicial forums" (*id.* at 1152 [internal quotation marks omitted]). The Seventh Circuit also found that a lawsuit filed "by a group of employees to achieve more favorable terms or conditions of employment" is considered to constitute "concerted activity" under section 7 of the NLRA (*id.* [internal quotation marks omitted]). Accordingly, the court held, contracts such as the one at issue were unenforceable under the NLRA because they "stipulate away employees' [s]ection 7 rights or otherwise require actions unlawful under the NRLA" (*id.* at 1155).

What is more, the Seventh Circuit found that the clause was also unenforceable under the Federal Arbitration Act (9 USC § 1 *et seq.* [FAA]) (*Lewis*, 823 F3d at 1161). The court noted that, generally, "there is 'no doubt that illegal promises will not be enforced in cases controlled by the federal law' " (*Lewis*, 823 F3d at 1157, quoting *Kaiser Steel Corp. v Mullins*, 455 US 72, 77 [1982]). The court noted that the FAA incorporated that principle through its saving clause, which confirmed that agreements to arbitrate "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*" (*Lewis*, 823 F3d at 1156 [emphasis added], quoting 9 USC § 2). The court held that because the provision at issue is unlawful under section 7 of the NLRA, it was an illegal provision, and therefore met the criteria of the FAA's saving clause for nonenforcement (*Lewis*, 823 F3d at 1157).

A few months after the Seventh Circuit decided *Lewis*, the Ninth Circuit also held that the NLRA precludes contracts

requiring employees to waive concerted legal claims regarding wages, hours, and terms or conditions of employment (*Morris v Ernst & Young, LLP*, 834 F3d 975 [9th Cir 2016], *cert granted* 580 US —, 137 S Ct 809 [2017]). The Second, Fifth, and Eighth Circuits have disagreed, holding that requiring employees to agree to waive class or collective actions does not violate the NLRA (*Cellular Sales of Missouri, LLC v National Labor Relations Bd.*, 824 F3d 772, 775-776 [8th Cir 2016]; *D.R. Horton, Inc. v National Labor Relations Bd.*, 737 F3d 344, 355-362 [5th Cir 2013]; *Sutherland v Ernst & Young LLP*, 726 F3d 290, 297 n 8 [2d Cir 2013]). Notably, however, three years after its decision in *Sutherland*, the Second Circuit stated that if it were writing on a clean slate, it might "well be persuaded" to join the Seventh and Ninth Circuits in finding that a waiver of collective action is unenforceable (*Patterson v Raymours Furniture Co., Inc.*, 659 Fed Appx 40, 43 [2d Cir 2016], *petition for cert filed* Sept. 26, 2016). The court, however, rested its decision on stare decisis grounds, believing itself bound to follow *Sutherland* "until such time as [that case is] overruled either by an en banc panel of our Court or by the Supreme Court" (*id.* [internal quotation marks omitted]).

As is common with any question regarding enforceability of an arbitration clause, the policies underlying each side of the issue stand in stark contrast, implicating an individual's right to resort to the courts, on the one hand, and this State's preference for enforcing arbitration agreements, on the other. In *Sutherland*, the Second Circuit recognized that the cost to the plaintiff of individually litigating her claim for overtime wages would dwarf her potential recovery of less than $2,000, effectively precluding her and similar plaintiffs from pursuing such claims (*Sutherland*, 726 F3d at 294-295). Thus, the high cost of individual litigation might well mean that employers will evade consequences for allegedly unfair labor practices as long as the amount owed to each individual employee is lower than the cost of litigation. Conversely, as the Fifth Circuit explained in *D.R. Horton*, the FAA establishes a "liberal federal policy favoring arbitration agreements" (*D.R. Horton*, 737 F3d at 360 [internal quotation marks omitted]); invalidating waivers of collective claims by employees would necessarily disfavor arbitration (*id.* at 359).

In *D.R. Horton*, the Fifth Circuit recognized that the purpose of NRLA section 7—the section allowing for concerted action by employees—was to equalize bargaining power by allowing em-

ployees to band together in confronting an employer regarding the terms and conditions of employment (*D.R. Horton*, 737 F3d at 356). Nor did the Fifth Circuit dispute that collective and class claims are protected by the NLRA (*id.* at 357). Nevertheless, relying on a United States Supreme Court case addressing whether the FAA requires enforcing waivers of class arbitration in consumer contracts (*see AT&T Mobility LLC v Concepcion*, 563 US 333 [2011]), the Fifth Circuit found that "[r]equiring a class mechanism is an actual impediment to arbitration and violates the FAA" (737 F3d at 360) and that there was no congressional command to override the FAA (*id.* at 362).

We disagree with the Fifth Circuit's reasoning for two reasons. First, the court's reasoning begs the question, essentially asserting the circular argument that individual arbitration, not collective litigation, should be the norm because any other policy would impede arbitration. The court determined there to be no congressional command that the NLRA should override the FAA, but we can divine no reason that the FAA policy favoring arbitration should trump the NLRA policy prohibiting employers from preventing collective action by employees.

Second, the Fifth Circuit explained that the FAA's saving clause is inapplicable because class arbitration "interferes with fundamental attributes of arbitration," which is supposed to be a streamlined process, "and thus creates *a scheme inconsistent with the FAA*" (*id.* at 359 [emphasis added and internal quotation marks omitted]). The court apparently concluded that because the collective claims are inconsistent with the FAA, they cannot fit within the FAA's saving clause (*id.*). But in separately discussing whether a congressional command to override the FAA can be found in the NLRA, the Fifth Circuit stated that "we do not find . . . a conflict" between the FAA and the NLRA's purpose (*id.* at 361). Indeed, the Fifth Circuit's conclusion in this regard accords with the Seventh Circuit's decision in *Lewis*, which found that no conflict between the NLRA and the FAA existed, and therefore, that the FAA did not mandate the enforcement of the employer's arbitration clause. Hence, *D.R. Horton* contains an internal contradiction—on the one hand, the court states that the availability of collective claims under the NLRA cannot fit within the FAA's saving clause because that requirement "creates a scheme inconsistent with the FAA" (*id.* at 359 [internal quotation marks omit-

ted]), but at the same time, finds that there is no conflict between the FAA and the NLRA (*id.* at 361). The Fifth Circuit never adequately addresses this contradiction.

In all likelihood, the United States Supreme Court will resolve this circuit split in due course. In the meantime, we find the Seventh Circuit's reasoning in *Lewis* more persuasive—far more than that of the Fifth Circuit. Notably, the Fifth Circuit does not dispute that the NLRA protects collective and class claims (*D.R. Horton*, 737 F3d at 357). The NLRB itself has also repeatedly concluded that NLRA section 7 forecloses enforcement of arbitration agreements that waive an employee's right to pursue collective legal action in any judicial or arbitral forum (*see e.g. D.R. Horton, Inc.*, 357 NLRB No. 184 [2012]; *Murphy Oil USA, Inc.*, 361 NLRB No. 72 [2014]). It follows then, as the Seventh Circuit decided, that waiver of collective claims violates the NLRA, and is void and invalid under the FAA's saving clause.

Our relatively recent holding in *Weinstein v Jenny Craig Operations, Inc.* (132 AD3d 446 [1st Dept 2015]) does not compel any result to the contrary, despite NY Life's insistence otherwise. In *Weinstein*, we upheld an arbitration clause even though it contained a class-action waiver. The holding in *Weinstein*, however, concerned two issues: first, whether the defendant employer had initiated the signing of arbitration agreements containing class-action waivers for the express purpose of excluding putative class members from the already ongoing court litigation; and second, whether the employer had waived its right to compel arbitration by waiting until after the court had granted class certification to try and enforce the arbitration agreement. We found that the IAS court had properly declined to enforce any agreements signed after commencement of the litigation, but that the court had improperly found the defendant to have waived its right to arbitration (*id.* at 447). The parties did not ask the IAS court to address the far broader issue of whether class-action waivers in general, or that class-action waiver in particular, ran afoul of the NLRA. Nor did we or the IAS court address that issue.

We do address that issue today, and in so doing, we choose to follow the Seventh Circuit's holding in *Lewis* and hold that the waiver of class action is unenforceable. Accordingly, under the terms of Kartal's contract, her class claim on the remaining

first cause of action is to proceed in court rather than in arbitration.[3]

■ As to the wage deduction claims, we find that the IAS court should have dismissed the second cause of action as to all the plaintiffs. Commission reversals, as occurred here, were not illegal wage deductions, but rather were part of the calculation of commissions earned (*Pachter v Bernard Hodes Group, Inc.*, 10 NY3d 609 [2008]). Labor Law § 193 prohibits employers from making "any deduction from the wages of an employee" unless permitted by law or authorized by the employee for the employee's benefit, such as for insurance premiums or pension benefits. In *Pachter*, the Court of Appeals explained that where, similar to here, a ledger-based system of credits and deductions was used in paying commissions, the legality of deductions not authorized by Labor Law § 193 depended on whether the commission was "earned" before the deduction was made to the ledger account (10 NY3d at 617).

The *Pachter* Court held that under the common law, an employee earns his or her commission upon producing a ready, willing, and able purchaser (*id.* at 618). The Court further held, however, that the parties "may provide that the computation of a commission will include certain downward adjustments . . . . In that event, the commission will not be deemed 'earned' or vested until computation of the agreed-upon formula" (*id.* at 617-618). The Court thus concluded that the plaintiff and the defendant had a "contract under which the final computation of the commissions earned by [the plaintiff] depended on first making adjustments for nonpayments by customers and the cost of [the plaintiff's] assistant, as well as miscellaneous work-related expenses" (*id.* at 618).

Likewise, here, each plaintiff's TAS Agreement specifically allowed for deductions for two of the three types of commission reversals plaintiffs complain about: annualized commission reversals and refund of premium reversals. Accordingly, these alleged commission reversals and charge-backs were provided for in plaintiffs' contracts with defendants as part of their agreed-upon measure of compensation, and therefore were not illegal deductions from wages under Labor Law § 193 (*see Pachter*, 10 NY3d at 618).

---

**3.** The first cause of action which, as noted above, is not at issue on this appeal alleges unlawful wage deductions for work facilities (i.e., the agents' use of cubicle space, telephone service, and payments for mandatory professional liability insurance) in violation of Labor Law § 193.

With regard to commission reversals for charge-backs, plaintiffs Chenensky and Gold do not dispute that they never experienced a commission reversal and therefore have no claim for those deductions. Moreover, plaintiffs Johnson's and Kartal's Agent's Contracts provided that each would receive a charge-back for payment received on any policy that NY Life deemed appropriate at any time to reject, decline, rescind, reform, modify, or cancel; in fact, plaintiffs acknowledge that Johnson's and Kartal's Agent's Contracts specifically provided for those charge-backs. Thus, those items are part of the agreed upon computation of their commissions, and do not constitute illegal wage deductions (*see Pachter*, 10 NY3d at 618).

With respect to the overtime and minimum wage claims (the third and fourth causes of action), we conclude that plaintiffs Johnson and Kartal are not entitled to overtime pay or to the minimum wage. New York has adopted the manner, methods, and exemptions of the FLSA regarding overtime pay (12 NYCRR 142-2.2; *see* 29 USC §§ 207, 213). Further, as the parties here agree, New York Law also follows the FLSA's minimum wage requirements. Federal regulations, in turn, define "outside salesman" as used in the FLSA as an employee whose primary duty is making sales or obtaining orders or contracts and who is customarily and regularly engaged away from the employer's place of business while performing that primary duty (29 CFR 541.500). Work incidental to or that furthers the employee's sales efforts is part of the primary duty of making sales (*id.*).

As noted, Johnson and Kartal's directive from NY Life, as set forth in the sales cycle, was to engage in fact-finding to determine a prospective client's needs and then devise an insurance product tailored to the prospective client's specific needs. Johnson and Kartal performed this work incidental to, and in furtherance of, their sales efforts on NY Life's behalf; indeed, the ultimate goal of the fact-finding was to sell insurance to the prospective client. Accordingly, the record here demonstrates conclusively that plaintiffs Johnson and Kartal were outside salespeople exempt from overtime and minimum wage requirements, and not, as they assert, advisors subject to the state minimum wage and overtime requirements (*see* Labor Law § 651 [5] [d]; 12 NYCRR 142-2.2, 142-2.14).[4]

---

4. We note that the Second Circuit found in *Gold v New York Life Ins. Co.* (730 F3d 137 [2d Cir 2013]) that plaintiff Gold was hired and trained to sell

Accordingly, the order of Supreme Court, New York County (O. Peter Sherwood, J.), entered on or about September 4, 2015, which, to the extent appealed from as limited by the briefs, granted defendants' motion for summary judgment dismissing the second, third, and fourth causes of action as to all plaintiffs except plaintiff Melek Kartal, and granted defendants' motion to compel Kartal to arbitrate her claims, should be modified, on the law, to grant the motion for summary judgment dismissing the second, third, and fourth causes of action as to all plaintiffs, and to deny the motion to compel Kartal to arbitrate, and otherwise affirmed, without costs.

ANDRIAS, J. (dissenting in part). I agree with the majority that any alleged commission reversals and charge-backs plaintiffs experienced were provided for in their contracts with defendants as part of their agreed-upon measure of compensation, and therefore were not illegal deductions from wages under Labor Law § 193 (see *Pachter v Bernard Hodes Group, Inc.*, 10 NY3d 609 [2008]). I also agree with the majority that the record demonstrates conclusively that plaintiffs Johnson and Kartal were outside salespeople (see *Gold v New York Life Ins. Co.*, 730 F3d 137 [2d Cir 2013]). However, because I believe that the provisions in Kartal's contract that require employees to waive class and collective proceedings and resolve employment-related disputes through individual arbitration are enforceable under the Federal Arbitration Act (FAA) (9 USC § 1 *et seq.*), and are not prohibited by the National Labor Relations Act (NLRA) (29 USC § 151 *et seq.*), I dissent in part.

The FAA "reflects a legislative recognition of the desirability of arbitration as an alternative to the complications of litigation. The Act, reversing centuries of judicial hostility to arbitration agreements, was designed to allow parties to avoid the costliness and delays of litigation, and to place arbitration agreements upon the same footing as other contracts" (*Genesco, Inc. v T. Kakiuchi & Co., Ltd.*, 815 F2d 840, 844 [2d Cir 1987] [internal quotation marks and citations omitted]).

In conformity with the legislative intent, the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms" (*Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford*

insurance, his compensation depended on sales, and he maintained his own client lists and worked outside NY Life's office (*id.* at 145). At oral argument before the IAS court, plaintiffs conceded that Johnson's and Kartal's roles for NY Life were exactly the same as Gold's.

*Junior Univ.*, 489 US 468, 478 [1989]; *see also Rent-A-Center, West, Inc. v Jackson*, 561 US 63, 67 [2010]). Toward this end, section 2, the Act's "primary substantive provision" (*Moses H. Cone Memorial Hospital v Mercury Constr. Corp.*, 460 US 1, 24 [1983]), states:

> "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (9 USC § 2).

The "saving clause" of section 2 "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue" (*AT&T Mobility LLC v Concepcion*, 563 US 333, 339 [2011] [internal quotation marks omitted]). The application of the FAA to statutory claims may also be precluded where "the FAA's mandate has been overridden by a contrary congressional command" (*CompuCredit Corp. v Greenwood*, 565 US 95, 98 [2012] [internal quotation marks omitted]). "The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue" (*Shearson/American Express Inc. v McMahon*, 482 US 220, 227 [1987]).

The National Labor Relations Board (NLRB) has adopted the position that arbitration agreements that waive an employee's right to pursue legal claims in any judicial or arbitral forum on a collective or class action basis are unenforceable because they conflict with sections 7 and 8 of the NLRA (29 USC §§ 157, 158 [a] [1]), which, respectively, guarantee employees the right "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," and prohibit employers from "interfer[ing] with [or] restrain[ing]" employees' section 7 rights. However, as the majority observes, the United States Courts of Appeals that have ruled on the issue are divided as to whether section 7 qualifies as a contrary congressional command sufficient to overcome the FAA's mandate that an arbitration agreement be enforced according to its terms.

The Second, Fifth and Eighth Circuits have rejected the NLRB's position and have enforced the class or collective ac-

tion waivers under the FAA and/or the Fair Labor Standards Act (FLSA) (29 USC § 201 *et seq.*) (*see Sutherland v Ernst & Young LLP*, 726 F3d 290, 297 n 8 [2d Cir 2013]; *D.R. Horton, Inc. v National Labor Relations Bd.*, 737 F3d 344, 362 [5th Cir 2013]; *Cellular Sales of Missouri, LLC v National Labor Relations Bd.*, 824 F3d 772, 776 [8th Cir 2016]).[1]

In *Sutherland,* the Second Circuit held that nothing in the FLSA's text or legislative history indicated a congressional intent to forbid enforcement of class waiver clauses in mandatory arbitration agreements. In so ruling, the court found that "the FLSA collective action 'right' " is merely procedural in nature (*Sutherland,* 726 F3d at 297 n 6) and rejected the plaintiff's contention that it should defer to the NLRB's rationale (*id.* at 297 n 8).

In *D.R. Horton*, the Fifth Circuit held that a class action is a procedural device used to bring substantive claims rather than a substantive right in and of itself, and that "[n]either the NLRA's statutory text nor its legislative history contains a congressional command against application of the FAA" (*D.R. Horton,* 737 F3d at 361). Noting that the NLRB's position would effectively impose an across-the-board ban on class waivers, the court observed that "[a]s *Concepcion* [*AT&T Mobility LLC v Concepcion*, 563 US 333 (2011), *supra*] held as to classwide arbitration, requiring the availability of class actions interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA" (*id.* at 360 [internal quotation marks omitted]). Consequently, the NLRB could not disregard the FAA's command that arbitration agreements be enforced according to their terms—including those limiting the availability of class procedures.

In *Cellular Sales*, the Eighth Circuit, reaffirming its decision in *Owen v Bristol Care, Inc.* (702 F3d 1050 [8th Cir 2013]), found that the NLRA did not suffice to override the mandate of the FAA in favor of individual arbitration (824 F3d at 776).

The Seventh and Ninth Circuits have reached the opposite conclusion, holding that a class or concerted action waiver in an employment agreement conflicts with the right to engage in collective activity under sections 7 and 8 of the NLRA, which

1. The Supreme Courts of California and Nevada have also upheld class waivers in employment arbitration agreements (*see Iskanian v CLS Transp. Los Angeles, LLC*, 59 Cal 4th 348, 365-374, 327 P3d 129, 137-143 [2014], *cert denied* 574 US —, 135 S Ct 1155 [2015]; *Tallman v Eighth Jud. Dist. Ct.*, 359 P3d 113, 122-123 [Nev 2015]).

they deemed a substantive right (*see Morris v Ernst & Young, LLP*, 834 F3d 975, 983 [9th Cir 2016], *cert granted* 580 US —, 137 S Ct 809 [2017]; *Lewis v Epic Sys. Corp.*, 823 F3d 1147 [7th Cir 2016], *cert granted* 580 US —, 137 S Ct 809 [2017]).

The majority believes that we should follow *Lewis* and *Morris*, which will be reviewed by the United States Supreme Court, as the more persuasive authority.[2] I do not agree.

While *Lewis* and *Morris* adopt the NLRB's position, the NLRB has no special expertise in, and is not charged with administering, the FAA, and this Court need not defer to its conclusion that the right at stake is "substantive" for FAA purposes (*see e.g. Hoffman Plastic Compounds, Inc. v NLRB*, 535 US 137, 143-144 [2002]). Rather, to determine whether a contrary congressional command exists, we must look to "the text of the [NLRA], its legislative history, or an 'inherent conflict' between arbitration and the [NLRA's] underlying purposes" (*Gilmer v Interstate/Johnson Lane Corp.*, 500 US 20, 26 [1991]). Congress must demonstrate its intent to supersede the FAA with "clarity" (*CompuCredit*, 565 US at 103).

Here, Kartal has not met her burden of showing that Congress intended her employment claims to fall outside the FAA (*see Walthour v Chipio Windshield Repair, LLC*, 745 F3d 1326, 1331 [11th Cir 2014], *cert denied* 573 US —, 134 S Ct 2886 [2014]). "Neither the NLRA's statutory text nor its legislative history contains a congressional command against application of the FAA," and there is no "inherent conflict between the FAA and the NLRA's purpose" (*D.R. Horton*, 737 F3d at 361). Although the NLRA gives employees a right to bargain collectively, the statute does not expressly give employees the right to arbitrate or litigate disputes as a class or collective action, and the legislative history lacks any indication of a congressional command precluding courts from enforcing collective-action waivers according to their terms. Without explicit authorization of collective actions in the text of the statute or discussion of class actions in the legislative history of the Act, there is no support for the majority's position that the NLRA prohibits enforcement of an arbitration provision with a class action waiver provision.

---

**2.** *Lewis* and *Morris* have been consolidated for oral argument for the Supreme Court's October 2017 Term. The question presented is whether the collective-bargaining provisions of the NLRA prohibit the enforcement under the FAA of an agreement requiring an employee to arbitrate claims against an employer on an individual, rather than a collective, basis.

Moreover, "the right to bring a collective action on behalf of others" is a "litigation mechanism," and therefore a mere procedural right (*Walthour*, 745 F3d at 1337). As the United States Supreme Court explained in *Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc.* (473 US 614 [1985]), "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum" (*id. at* 628; *Joseph v Quality Dining, Inc.*, 2017 WL 1062480, *6, 2017 US Dist LEXIS 40604, *19 [ED Pa, Mar. 21, 2017, Civil Action No. 16-1907] ["Even concerted, collective activity generally speaking should be understood as a method, a means, a procedure for securing the other underlying rights, entitlements, and interests that employees wish to pursue—such as the fair, legal use of tip pooling to compensate servers paid nominally below the minimum wage that is the real substantive right in this case"]).

Significantly, the United States Supreme Court has interpreted the FAA's saving clause narrowly. As the Fifth Circuit observed in *D.R. Horton*, " 'In every case the Supreme Court has considered involving a statutory right that does not explicitly preclude arbitration, it has upheld the application of the FAA' " (737 F3d at 357 n 8, quoting *Walton v Rose Mobile Homes LLC*, 298 F3d 470, 474 [5th Cir 2002]; *see also American Express Co. v Italian Colors Restaurant*, 570 US —, —, 133 S Ct 2304, 2311-2312 [2013] [waiver of class arbitration is enforceable under the FAA even when the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery]; *AT&T Mobility LLC v Concepcion*, 563 US at 339 [the FAA reflects both a "liberal federal policy favoring arbitration" agreements and the "fundamental principle that arbitration is a matter of contract" (internal quotation marks omitted)]; *DIRECTV, Inc. v Imburgia*, 577 US —, —, 136 S Ct 463, 471 [2015]; *Begonja v Vornado Realty Trust*, 159 F Supp 3d 402, 410 [SD NY 2016] ["the Supreme Court has recently held, for there to be a waiver of statutory rights, the *right* to pursue statutory claims must be blocked. It is not enough that the process of bringing such claims in arbitration would be prohibitively expensive or otherwise impracticable"]). Indeed, "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer simplicity, informality, and expedition, characteristics that generally make arbitration an attractive vehicle for the resolution

of low-value claims" (*Walthour*, 745 F3d at 1337 [internal quotation marks omitted]).

Furthermore, prohibiting class arbitration waivers would discourage arbitration in general, to an extent that is impermissible under the FAA (*D.R. Horton* at 359-360). As the Supreme Court found in *Concepcion*, "Requiring the availability of class-wide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA" (563 US at 344).

In adopting the contrary position, the majority notes that in *Patterson v Raymours Furniture Co., Inc.* (659 Fed Appx 40, 43 [2d Cir 2016], *petition for cert filed* Sept. 26, 2016), the Second Circuit stated that "[i]f we were writing on a clean slate, we might well be persuaded, for the reasons forcefully stated in Chief Judge Wood's and Chief Judge Thomas's opinions in *Lewis* and *Morris*, to join the Seventh and Ninth Circuits and hold that the EAP's waiver of collective action is unenforceable." However, despite the reservations expressed in *Patterson*, the Second Circuit has not overruled *Sutherland* (726 F3d 290), and courts within the Second Circuit and elsewhere continue to follow it (*see e.g. Mumin v Uber Tech., Inc.*, 2017 WL 934703, 2017 US Dist LEXIS 34008 [ED NY, Mar. 7, 2017, Nos. 15-CV-6143 (NGG) (JO), 15-CV-7387 (NGG) (JO)]; *Kai Peng v Uber Techs., Inc.*, 2017 WL 722007, *16-17, 2017 US Dist LEXIS 25840, *41-44 [ED NY, Feb. 23, 2017, No. 16-CV-545 (PKC) (RER)]; *Joseph v Quality Dining, Inc.*, 2017 WL 1062480, *7, 2017 US Dist LEXIS 40604, *20-21 [ED Pa, Mar. 21, 2017, Civil Action No. 16-1907] ["The Court declines to follow recent out-of-Circuit decisions holding such a waiver void under the NLRA and instead considers more persuasive the holdings of the Fifth Circuit and other courts that enforce class arbitration waivers under the FAA"]; *Kobren v A-1 Limousine Inc.*, 2016 WL 6594075, *4, 2016 US Dist LEXIS 154012, *11 [D NJ, Nov. 7, 2016, Civil Action No. 16-516-BRM-DEA] ["absent binding authority to the contrary, this Court agrees with the reasoning of the Second, Fifth, and Eight(h) Circuits that there is no 'inherent conflict' between the FAA and NLRA, particularly in light of the strong public policy considerations underlying the FAA and the general understanding that the NLRA permits and requires arbitration in labor disputes"]).

Accordingly, Kartal's arbitration agreement should be enforced according to its terms, and the IAS court's order should be affirmed.

ACOSTA, P.J., and MAZZARELLI, J., concur with MOSKOWITZ, J.; FRIEDMAN and ANDRIAS, JJ., dissent in part in an opinion by ANDRIAS, J.

Order, Supreme Court, New York County, entered on or about September 4, 2015, modified, on the law, to grant the motion for summary judgment dismissing the second, third, and fourth causes of action as to all plaintiffs, and to deny the motion to compel Kartal to arbitrate, and otherwise affirmed, without costs.